UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KENYON D. REYNOLDS, ) <br> ) <br> *Petitioner*, ) <br> ) <br> v. ) <br> ) <br> STANTON HEIDLE, ) <br> ) <br> *Respondent*, ) | Case No. 3:25-cv-293 <br><br> Judge Travis R. McDonough <br><br> Magistrate Judge Jill E. McCook |

**MEMORANDUM OPINION AND ORDER**

Petitioner Kenyon D. Reynolds filed a pro se federal habeas petition under 28 U.S.C. § 2254 seeking to challenge his 2018 Knox County judgments of conviction for second-degree murder, three counts of possession of a firearm, and various drug charges (Doc. 2). Respondent moved to dismiss the petition (Doc. 10) and waive the filing of the complete state-court record (Doc. 11). Petitioner failed to respond to either motion, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1. For the reasons set forth below, Respondent's motions will be granted, and this action will be dismissed with prejudice.

I.      **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

On or about July 2, 2015, Petitioner sold heroin that resulted in the victim's fatal overdose. *State v. Reynolds*, No. E2021-00066-CCA-R3-CD, 2022 WL 1741266, at *3–4 (Tenn. Crim. App. May 31, 2022), *no perm. app. filed*. As part of their investigation into the victim's death, law enforcement caught Petitioner engaged in the sale of heroin a few days later. *Id.* at *4–5. At Petitioner's jury trial, Petitioner admitted to selling heroin, and the state introduced evidence that Petitioner's drug sales led to the death of the victim. *Id.* at *4. The jury convicted

Petitioner of second-degree murder for the death of his client, as well as numerous other drug and firearms-related offenses, and the court imposed a total effective sentence of thirty-seven years. *Id.* at *5.

The Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions on direct appeal.[1] *Id.* at *1. Petitioner subsequently filed a petition for post-conviction relief alleging the ineffective assistance of trial counsel (Doc. 9-1, at 66–78). After appointing Petitioner counsel and holding an evidentiary hearing, the post-conviction court denied relief. *Reynolds v. State*, No. E2023-01441-CCA-R3-PC, 2024 WL 4481892 (Tenn. Ct. Crim. App. Oct. 14, 2024), *perm. app. denied Reynolds v. State*, No. E2023-01441-SC-R11-PC, at *1 (Tenn. 2025). The TCCA affirmed the judgment of the post-conviction court, and on February 20, 2025, the Tennessee Supreme Court denied Petitioner permission to appeal. *Id.*

Thereafter, Petitioner filed the instant petition on or about June 12, 2025, raising the following grounds for relief:

> I. The TCCA's ruling that the trial court did not err by failing to sever offenses was an unreasonable application of *Zafiro v. U.S.*, 506 U.S. 534 (1993).
>
> II. The TCCA's ruling that the trial court did not err by failing to suppress evidence was [an] unreasonable application of *Stone v. Powell*, 96 S. Ct. 3037 (1976).
>
> III. The TCCA's ruling that the trial court did not err by failing to instruct the jury on unlawful possession of [a] handgun was an unreasonable applicat[ion] of *Rehaif v. U.S.*, 588 U.S. 225 (2019) and *U.S. v. Gaudin*, 515 U.S. 506, 511[.]
>
> IV. The TCCA's ruling that [the] trial court erred by failing to merge his unlawful poss[ession of] handgun counts was an unreasonable application of *Currier v. Virginia*[.]

---

[1] The TCCA remanded the case to merge Counts 13 and 14 but affirmed in all other regards. *Id.* at *11.

(Doc. 2, at 5, 7, 8, 10 (emphases added to case names)). The Court ordered Respondent to file the state-court record and a response to the Petition (Doc. 6). Respondent subsequently filed excerpts of the relevant state-court records (Doc. 9), a motion to dismiss the petition for Petitioner's failure to exhaust his federal claims in state court (Doc. 10), a memorandum in support of the motion to dismiss (Doc. 13), and a motion to waive the requirement that he submit the complete state-court record (Doc. 11). Petitioner did not respond to either of Respondent's motions within the deadline to do so. *See* E.D. Tenn. L.R. 7.1. This matter is now ripe for review.

## II. MOTION TO WAIVE REQUIREMENT TO FILE COMPLETE STATE-COURT RECORD

Respondent moves the Court for leave from any requirement to file the full state-court record in this case because (1) he has submitted the records necessary to demonstrate that Petitioner's federal habeas claims were not exhausted in state court and (2) Petitioner's complete state-court records "constitute extensive filings from six separately-docketed state-court appeals, which records are not relevant to the claims Petitioner raises" in his habeas petition (Doc. 11, at 1–2, citing cases). As noted above, Petitioner has not filed a response to this motion, and by failing to do so, the Court finds he has waived opposition to the sought relief. *See* E.D. Tenn. L.R. 7.2. Further, it is apparent that resolution of Petitioner's federal habeas claims relates only to whether these claims were presented in his direct appeal, and, therefore, the submission of additional records is unnecessary. Accordingly, Respondent's motion to waive any requirement to file Petitioner's complete state-court record (Doc. 11) is **GRANTED**.

## III. RELEVANT LEGAL STANDARD GOVERNING MOTION TO DISMISS

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding

3

AEDPA generally applies to habeas petitions filed after its effective date); *see also Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998) ("The AEDPA applies to all habeas cases filed after April 24, 1996."). The AEDPA requires, as relevant here, a petitioner to exhaust his available state-court remedies before seeking federal habeas relief. 28 U.S.C. § 2254(d)(1)(A).

The exhaustion principle requires a petitioner to have presented each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 302–03 (1984)). The claim must have been "fairly presented" in that "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971). While a petitioner pursuing his federal claims in state court is not expected "to cite chapter and verse of constitutional law," the petitioner must frame his argument so that the state courts have "the opportunity to see both the factual and legal basis for each claim." *Nian v. Warden, North Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009) (quotation omitted)). This means that "[g]eneral allegations of the denial of rights [such as] a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

"It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state and the federal courts. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same

4

theory as presented in state appellate process). In Tennessee, presentation of the federal claim to the TCCA satisfies this requirement. Tenn. S. Ct. R. 39.

The Sixth Circuit considers four factors in determining whether a federal claim was fairly presented in state court: "(1) reli[ance] upon federal cases employing constitutional analysis; (2) reli[ance] upon state cases employing federal constitutional analysis; (3) phras[ing] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleg[ing] facts well within the mainstream of constitutional law." *Nian*, 994 F.3d at 751 (quoting *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017)) (internal quotation marks omitted).

A federal habeas claim that was not fairly presented through the state-court review process that cannot now be considered due to a state procedural rule, such as Tennessee's one-year statute of limitation on post-conviction actions or its prohibition against second petitions, is procedurally defaulted. *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule). A federal habeas court cannot hear a procedurally defaulted claim unless the petitioner establishes both cause and prejudice to excuse the default, or that failure to address the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977).

The exception for a fundamental miscarriage of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is "actually innocent of the underlying offense[.]" *Dretke v. Haley*, 541 U.S. 386, 388 (2004);

5

*Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, a viable claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Regarding the "cause and prejudice" exception, the "prejudice" sufficient to overcome a default must be actual, with the petitioner bearing "the burden of showing, not merely that the errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). And "cause" for a default is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules. *See Coleman*, 501 U.S. at 753.

IV. ANALYSIS

    A. **Ground One**

Petitioner first claims that "the TCCA's ruling that the trial court did not err by failing to sever offenses was an unreasonable application of *Zafiro v. U*[*nited*] *S*[*tates*], 506 U.S. 534 (1993)" (Doc. 2, at 5). He alleges that his double jeopardy and due process protections were violated because he "went to trial on multiple charges" stemming from "only two events[,]" and the charges "involved the same elements" (*id.*).

But Petitioner did not present the TCCA with a fair opportunity to address these issues. Instead, Petitioner framed his appeal of the charge-severance issue as one entirely of Tennessee

law.  Specifically, Petitioner claimed in his direct appeal brief that "the trial court committed legal error by failing to sever counts 7–10 and counts 12–14 from the other counts . . . where the conduct charged in counts 7–10 and counts 12–14 took place several days later than the conduct in the other charged counts[] and was not part of a common scheme with the other charged counts" (Doc. 9-1, at 53).  Petitioner cited as the "applicable law" only a state rule of criminal procedure, i.e., Tennessee Rule of Criminal Procedure 14(b) (*id.*).  And in the argument section for this claim, Petitioner cited Rules 403 and 404 of the Tennessee Rules of Evidence, Rule 14(b)(2)(A) of the Tennessee Rule of Criminal Procedure, and a state-court case, *State v. Hoyt*, 928 S.W.2d 935 (Tenn. Crim. App. 1995), which itself cited a treatise on Tennessee evidentiary law (Doc. 9-1, at 54–55).

Thus, Petitioner did not present the state court with any reference to *Zafiro*, double jeopardy, due process, or any other federal provision.  And the only case cited in Petitioner's charge-severance argument, *Hoyt*, employs no federal constitutional analysis.  *See Hoyt*, 928 S.W.2d at 943 (defining "common scheme or plan" under Tennessee Rule of Criminal Procedure).  Moreover, *Zafiro* concerned the severance of defendants, not claims.  *Zafiro*, 506 U.S. at 539.  And even that question turned on interpreting the Federal Rules of Criminal Procedure; the Constitution is not cited in the Supreme Court's opinion.  *See generally id.*

Further, Petitioner's "[g]eneral allegations of the denial of rights to . . . due process" and protection against double jeopardy "do not fairly present claims that specific constitutional rights were violated."  *McMeans*, 228 F.3d at 681.

Finally, Petitioner fails to "allege facts well within the mainstream of constitutional law." *Nian*, 994 F.3d at 751.  In fact, he does not allege any facts whatsoever.  Therefore, the Court finds all four factors of the Sixth Circuit's "fair presentation" test weigh heavily against

7

Petitioner. And as this federal claim was not fairly presented in state court, it is procedurally defaulted.

The Court finds Petitioner cannot establish prejudice from this defaulted claim, as it is meritless. "Improper joinder, in itself, does not violate the Constitution." *Collins v. Green*, 838 F. App'x 161, 167 (6th Cir. 2020) (quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). Rather, "improper joinder only violates the Constitution 'if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.'" *Id.* (quoting *Lane*, 474 U.S. at 446 n.8). Petitioner's habeas petition does not specify which charges he believes should have been severed, but he argued in his pretrial motion to sever (Doc. 9-1, at 1–3) and on appeal to the TCCA that counts 7–10 and 12–14 should have been severed from the remaining counts. *Reynolds*, 2022 WL 1741266, at *5.

The TCCA noted that "[c]ounts 7 and 8 arose from [Petitioner]'s selling heroin . . . on July 6 during the controlled buy." *Id.* at *7. Counts 9 and 10 arose from Petitioner's possession of heroin with intent to sell, as discovered in the search of a house associated with Petitioner, and counts 12–14 arose from Petitioner's possession of a firearm, as discovered in the same search. *Id.* Petitioner argued that these counts should have been severed from counts 1, 3, and 4, which arose from the July 2 sale that resulted in the death of the victim. *Id.* But, as the TCCA noted, evidence of the controlled transaction on July 6 would have been presented in a separate trial for the transaction on July 2 as proof of Petitioner's identity as the seller. *Id.* The TCCA found that this evidentiary overlap subjected all charges arising from the two transactions to mandatory joinder under Tennessee law and "did not impede 'a fair determination of guilt or innocence.'" *Id.* (quoting Tenn. R. Crim. P. 14(b)(2)(A)). It further found that evidence of these transactions would have been admissible in a separate trial for possession of heroin with intent to sell as proof

8

of intent. *Id.* This means counts 9 and 10 were properly joined with the above-discussed charges under permissive joinder, and severance was properly denied "because the offenses were part of a common scheme of [Petitioner's] heroin distribution business." *Id.*

The TCCA further found that this evidence of heroin possession "would be necessary in a trial for count 12, possession of a firearm with the intent to go armed during an attempt to commit a dangerous felony and with prior felony convictions, to establish that the defendant attempt[ed] to commit a dangerous felony," meaning count 12 was also properly joined under mandatory joinder. *Id.* (quotation marks omitted). Thus, so were counts 13 and 14, as they arose from the same firearm possession as count 12. *Id.* (citing Tenn. R. Crim. P. 8(A)). And the trial court properly denied severance of these counts, because Petitioner's "possessing a firearm did not cause the jury to convict him of selling and distributing heroin, or vice versa," so "severance of the firearm offenses was not necessary" to effectuate a fair trial. *Id.*

Accordingly, the Court finds, for the same reasons the TCCA upheld the denial of Petitioner's motion to sever under state law, Petitioner's right to a fair trial was not violated, and Petitioner's first habeas claim lacks merit. Thus, Petitioner has not provided grounds to excuse the default of this claim, and it must be dismissed.

**B.     Ground Two**

In his second claim for relief, Petitioner maintains that "the TCCA's ruling that the trial court did not err by failing to suppress evidence was [an] unreasonable application of *Stone v. Powell*" (Doc. 2, at 7). To support this claim, Petitioner argues that he "was denied his due process rights . . . for a full and fair litigation of his suppression evidence" because "all parties involved were not present" (*id.*). However, Fourth Amendment claims are not cognizable in federal habeas proceedings when the prisoner had a full and fair opportunity to litigate the issues

9

in state court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). Here, Petitioner had the opportunity to litigate any Fourth Amendment issues by filing a pretrial suppression motion, participating in a hearing on that motion, and by filing an appeal to the TCCA (*see* Doc. 9-1, at 4–9, 24–28, 56–59 and *Reynolds*, 2022 WL 1741266, at *8). Therefore, this claim does not present a cognizable basis for federal habeas review.

Moreover, in his state-court proceedings, Petitioner framed his Fourth Amendment argument as a challenge to evidence gathered from law enforcement's search of the house, maintaining that law enforcement obtained the garage door opener and gained entry into the house only through the search of the vehicle (*see* Doc. 9-1, at 4–9, 24–28, 56–59). Nowhere does Petitioner raise a claim regarding a party's absence from a proceeding (*see id.*). Therefore, this claim was not fairly presented and is procedurally defaulted.

Further, this issue lacks merit under any cognizable framing. Petitioner was present— and testified—at his motion to suppress (Doc. 9-1, at 24–28). As to any other infirmity in the resolution of his Fourth Amendment claim, the Court notes that the TCCA found law enforcement had probable cause to search the vehicle because they viewed Petitioner conducting a sale of heroin while in the vehicle immediately prior to the search. *Reynolds*, 2022 WL 1741266 at *8. And, under the automobile exception[2], this probable cause justified the complained-of warrantless search. *Id.* (citing *State v. Saine*, 297 S.W. 3d 199, 207 (Tenn. 2009), citing *Carroll v. United States*, 267 U.S. 132, 149 (1925)). Accordingly, any cognizable claim

---

[2] "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." *Carroll v. United States*, 267 U.S. 132, 149 (1925).

based on the denial of Petitioner's motion to suppress is meritless, and its default cannot be excused.

C. **Ground Three**

Third, Petitioner alleges that his jury was improperly instructed on unlawful possession of a handgun, arguing that "although the elements of knowing, intentional, and reckless may comport with state law, federal law requires each element to be proven" (Doc. 2, at 8). Petitioner maintains that the TCCA's rejection of his jury-instruction claim was an unreasonable application of *Rehaif v. United States*, 588 U.S. 225 (2019) and *United States v. Gaudin*, 515 U.S. 506 (1995) [*Id.*].

In *United States v. Gaudin*, 515 U.S. 506, 510 (1995), the Supreme Court noted its previous holdings interpreting the Fifth and Sixth Amendments to "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt[.]" *Gaudin*, 515 U.S. at 510. And in *Rehaif v. United States*, the Supreme Court held that prosecutions under certain federal statutes require the government to prove both that the criminal defendant possessed a firearm, and that he belonged to the relevant category of persons barred from possessing a firearm. *Rehaif*, 588 U.S. at 227–30.

However, just as with Petitioner's first two claims, Petitioner's jury-instruction claim is procedurally defaulted and otherwise meritless. In his brief to the TCCA on direct appeal, Petitioner alleged only that the jury instructions on counts 13 and 14 that the jury must find that he "intentionally, knowingly, or recklessly" possessed a firearm were inconsistent with his Presentment alleging that he "did unlawfully and knowingly possess a firearm[,]" which "deprived [him] of his constitutional right to a jury trial pursuant to the Sixth Amendment to the

11

United States Constitution and to Tennessee Constitution, Article I, Section 9" (Doc. 9-1, at 61). Thus, the TCCA did not unreasonably apply *Rehaif* and *Gaudin*, because it did not consider those cases, and Petitioner did not ask it to do so. Accordingly, this claim was not fairly presented to the state courts and is procedurally defaulted.

Further, the default cannot be excused, because the claim lacks merit that would establish prejudice. In his federal habeas petition, Petitioner correctly asserts that "each element" of a crime must be proven (Doc. 2, at 8). *See Gaudin*, 515 U.S. at 510. And, as the TCCA noted, "the constitutional right to trial by jury encompasses the right to a correct and complete charge of the law." *Reynolds*, 2022 WL 1741266, at *8. But, as the TCCA found, the trial court's jury instructions on the unlawful-possession charge were correct, so Petitioner's constitutional challenge fails. *Id.*

Petitioner argued to the TCCA that while the indictment stated as to counts 13 and 14 that Petitioner "unlawfully and knowingly possess[ed] a firearm," the trial court instructed the jury that to return a verdict of guilt on those counts it could find "that the defendant acted either intentionally, knowingly, or recklessly" (Doc. 9-1, at 61–62). Petitioner maintained the inclusion of "recklessly" in the jury instructions essentially permitted jurors to find him guilty beyond a reasonable doubt upon a lesser mental state, which rendered the instructions inaccurate so as to deprive him of his right to a fair jury trial (*id.*). But Petitioner ultimately acknowledged that the charge of knowingly possessing a firearm includes recklessly doing so (*id.*). And as the TCCA noted, under Tennessee law, the mens rea for a crime for which the legislature did not specify a requisite mental state, including the statute Petitioner was convicted of violating in counts 13 and 14, can be established by "intent, knowledge, or recklessness." *Reynolds*, 2022 WL 1741266, at *9 (quoting Tenn. Code Ann. § 39-11-301(c)). The jury was instructed accordingly.

12

Petitioner's citations to *Gaudin* and *Rehaif* do not alter the Court's resolution of this claim. As noted above, Gaudin recognized a criminal defendant's right to have the jury decide every element of a crime. *Gaudin*, 515 U.S. at 510. Petitioner fully enjoyed that right at trial. And *Rehaif* involved a question of federal statutory interpretation as to what elements of a certain federal crime its knowledge requirement applied to, not a question of the Sixth Amendment's application to state-court jury instructions. *See Rehaif*, 588 U.S. at 227–30.

Accordingly, the Court finds this claim is procedurally defaulted and meritless. Because Petitioner has not demonstrated its procedural default should be excused, this claim must be dismissed.

### D.     Ground Four

Finally, Petitioner claims that the TCCA unreasonably applied *Currier v. Virginia* by "ruling that [the] trial court erred by failing to merge his unlawful poss[ession of a] handgun counts" (Doc. 2, at 10). Particularly, Petitioner maintains that since he filed an unsuccessful pretrial motion to sever his offenses, the TCCA's decision ordering the trial court to merge counts 13 and 14 subjected him to double jeopardy (*id.*).

As previously noted, Petitioner sought the pretrial severance of various counts under the argument that they resulted from separate events, but that relief was denied (*see* Doc. 9-1, at 1–3, 10). Petitioner raised a failure-to-sever claim on direct appeal, and the TCCA agreed with Petitioner that counts 13 and 14—unlawful possession of a firearm with prior felonies involving the use of force and drugs—were alternate theories of the same offense, such that convicting Petitioner of both subjected him to double jeopardy. *Reynolds*, 2022 WL 1741266, at *9–11. The TCCA remedied this error by remanding the case to the trial court with instructions to merge the convictions for counts 13 and 14. *Id.* at *11.

13

Petitioner's federal habeas claim appears to be that the trial court's denial of his pretrial severance motion now prevents it from merging counts 13 and 14 as ordered by the TCCA. But Petitioner argued for the merger of the counts on direct appeal, and he did not appeal the trial court's entry of a corrected judgment. *See id.* at *9–11. And Petitioner did not challenge the merger or allege a violation of the double-jeopardy clause in his petition for post-conviction relief. *See Reynolds*, 2024 WL 4481892, at *1 (Doc. 9-1, at 66–78). It further appears that Petitioner failed to challenge the merger in his subsequent motions to correct an illegal sentence (*see* Doc. 9-1, at 79–87, 88). Petitioner can no longer raise his merger challenge in state court. *See, e.g.,* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule). Therefore, this issue is procedurally defaulted. *See, e.g., Jones*, 696 F.3d at 483.

Additionally, this claim's lack of merit prevents Petitioner from establishing prejudice to excuse his failure to exhaust state-court remedies. The merger of counts 13 and 14 cured any double-jeopardy violation; it is not one itself. Petitioner's pretrial motion to sever did not implicate double-jeopardy principles. *See generally* U.S. Const. Amend. V; *Yeager v. United States*, 557 U.S. 110, 117–18 (2009). Moreover, Petitioner's motion sought the severance of counts which arose from separate events, while Petitioner's convictions for counts 13 and 14 were ultimately merged because they arose from the same event. And Petitioner's citation to *Currier* has no relevance to Petitioner's argument, as it simply held that issue-preclusion rules governing civil trials do not apply through the double-jeopardy clause in criminal trials. *See Currier v. Virginia*, 585 U.S 493, 507–10 (2018). Accordingly, Petitioner cannot establish the prejudice necessary to overcome the default of this claim, and it must be dismissed.

V. **CONCLUSION**

Above, the Court granted Respondent's motion to waive any requirement to file Petitioner's complete state court record in this matter. It finds Respondent's motion to dismiss should likewise be granted, because all of Petitioner's federal habeas claims are procedurally defaulted. The first three are defaulted for Petitioner's failure to fairly present the claims in state court. The fourth is defaulted for Petitioner's failure to present the claim at all. And because each claim is without merit, the defaults cannot be excused by the cause-and-prejudice exception. Petitioner does not argue, nor does the Court find, applicability of the miscarriage-of-justice exception. Accordingly, Respondent's motion to dismiss Petitioner's federal habeas petition (Doc. 10) is **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

Additionally, the Court must consider whether to issue a certificate of appealability ("COA"), which Petitioner must obtain before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Reasonable jurists would not debate that Petitioner's claims are procedurally defaulted. Therefore, a COA **SHALL NOT** issue.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

                                            **/s/ *Travis R. McDonough***
                                            **TRAVIS R. MCDONOUGH**
                                            **UNITED STATES DISTRICT JUDGE**